UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Lottie Robertson,** | Civil No. 04-CV-72308 |
| Plaintiff, | Hon. Robert H. Cleland |
| v. | Magistrate Judge Morgan |
| **Experian Information Solutions, Inc., et al.,** | |
| Defendants. | |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.  CONCISE STATEMENT OF THE ISSUES PRESENTED (L.R. 7.1)**

Is Experian Information Solutions, Inc. ("Experian") entitled to summary judgment in its favor against claims brought by Plaintiff Lottie Robertson ("Plaintiff") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et. seq. ("FCRA") where (1) Plaintiff cannot offer any proof that she has suffered any damages, or that any of her alleged damages were caused by Experian, and (2) at all times Experian followed its established, reasonable procedures for reporting and reinvestigating credit information?

**II.  THE CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT**

The issues raised in Experian's Motion for Summary Judgment are governed by the FCRA.

**III.  INTRODUCTION**

Plaintiff has brought suit against Experian for various violations of the FCRA.  Plaintiff complains of Experian's reporting of credit information furnished by Capital One Bank ("Capital One"), from October 2002, when Plaintiff first disputed the information, until March 2004, when

Capital One instructed Experian to remove the information it had furnished to Experian about the Plaintiff.

Plaintiff claims that she was the victim of identity theft, and that the thief stole her identity to open a Capital One credit card. See Compl. ¶¶ 6-7. Apparently, the thief used Plaintiff's name and social security number to open the account, then made charges on the account. When the account ultimately became delinquent, the delinquency was attributed to Plaintiff, just as the thief had intended. Interestingly, Plaintiff never reported this identity theft to any law enforcement agency. See Deposition of Lottie Robertson, attached as Exhibit B to Experian's Fact Appendix[1] ("Robertson Dep.") at 185:6-10.

The uncontradicted evidence establishes Experian worked diligently to remedy the effects of the identity theft, including repeatedly confirming the accuracy of the information with Capital One. When Capital One ultimately instructed Experian to remove the tradeline information in March of 2004, it was removed and has not reappeared since. See Affidavit of Kimberly Hughes, attached as Ex. A to Experian's Fact Appendix ("Hughes Aff.") ¶ 20.

While the reasonableness of Experian's procedures and reinvestigations is detailed below, the most obvious and inescapable flaw in Plaintiff's FCRA claims is a want of damages, as well as a lack of causation between her alleged damages and Experian's reporting of the Capital One information. Indeed, as explained below, Plaintiff has an extensive derogatory credit history, including accounts that were charged off, sent to collection, or seriously delinquent. Given Plaintiff's horrific credit history, it is not surprising that she has been denied credit in the past several years. More importantly, however, there is not a scintilla of evidence that any creditor has denied her credit based in whole or in part because of a Capital One account appearing in her

---

[1] Pursuant to 14(g) of the Court's December 2, 2004 Scheduling Order, Experian has separately bound and filed its Fact Appendix.

credit file. As causation and damages are essential elements of an FCRA claim, summary judgment is appropriate. See e.g., Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991). (Plaintiff bears the burden of proving "that he was damaged as a result of an allegedly inaccurate…credit report.")

As the discovery period has come to a close, it is apparent Plaintiff has adduced no evidence that Experian's reporting caused her any damage. It is equally clear that Experian's procedures were in line with the requirements of the FCRA. Accordingly, Experian respectfully requests this Court grant summary judgment in its favor as to all causes of action.

### IV. MATERIAL FACTS[2]

#### A. The Credit Reporting Process

##### 1. Experian is a Credit Reporting Agency

Experian operates as a consumer credit reporting agency pursuant to the FCRA. Hughes Aff. ¶ 3. As a consumer credit reporting agency, Experian acts as a conduit of credit information that is pertinent to prudent credit granting and related decisions. Id. Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. Id. Experian does not originate or create any credit information, and Experian does not make loans or decide who should receive credit. Id. Both of those functions are handled entirely by the credit granting industry, over which Experian has no control. Id.

Experian essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as allowed by the FCRA. Id. ¶ 4. Credit grantors report to Experian credit information called "trade lines" that consist of credit account information such as account

---

[2] Pursuant to the Court's Order, Experian's "Statement of Material Facts" is attached to this memorandum as Exhibit 1.

number, account payment status, and balance information.  Id.  Along with trade lines, credit grantors report certain consumer identifying information associated with the trade line.  Id.

After the credit data is received by Experian and before it is added to a consumer's credit file, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported.  Id. ¶ 5.  These procedures include: (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports.  Id.  Furthermore, Experian has implemented a series of policies and procedures designed to protect against consumer fraud, including requiring sufficient identifying information be provided to Experian before Experian will take any action regarding a consumer's file.  Id.

### 2. Experian's Procedures for Providing Consumers with Copies of Their Credit File and for Conducting Reinvestigations

Experian has developed detailed procedures for providing consumers with access to their Experian credit files and means to dispute those items with which they disagree.  Id. ¶ 6. Experian has implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports.  Id.  Consumers who disagree with the accuracy or completeness of any item of information can dispute those items directly with Experian, pursuant to the FCRA.  Id. Experian actively encourages consumers to request credit disclosures, review them, and submit disputes of any items claimed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.  Id.

Experian does not have access to creditors' records. Id. ¶ 7. Therefore, after receiving consumer disputes Experian generally reinvestigates disputed information by contacting the furnishers who reported it, explaining the consumer's dispute, and asking for a response concerning the accuracy of the information. Id. Experian sends the furnisher, *i.e.*, the creditor, a "Consumer Dispute Verification." Id. Experian sends the Consumer Dispute Verification form manually (a "CDV") or electronically (an automated CDV, or "ACDV"). Id. The CDV or ACDV identifies the consumer and the basis of her dispute and asks the creditor to verify the information it currently is reporting to Experian. Id. The creditor then returns the CDV or ACDV to Experian and may verify the information, instruct Experian to delete the item, or instruct Experian to change it in some specific manner. Id. Experian then makes any changes instructed by the creditor. Id. Even if the creditor verifies the item, Experian will delete it if Experian's review of the CDV reveals that the information is inconsistent or insufficient to verify the item. Id. Experian then sends the consumer a credit report reflecting the results of the reinvestigation. Id. The summary also contains a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the investigation, including contacting the creditor directly and adding a statement to the consumer's credit file disputing the accuracy or completeness of the disputed item. Id. If the creditor fails to respond, then the information is updated or deleted, depending on the consumer's dispute. Again, the consumer is notified. Id.

**B.    Capital One - The Product of Purported Identity Theft**

While at times relevant to this lawsuit Plaintiff had over a half dozen derogatory tradelines in her credit file, this case involves information reported by a single creditor, Capital One. See Robertson Dep. at 30:16-19. Plaintiff claims here that information furnished by Capital One concerning her is inaccurate because the account was opened by a credit thief who

stole her identity and opened the Capital One account.[3] Complaint ¶¶ 6-7. Notably, while Plaintiff alleges she is the victim of identity theft, at no time did she make any effort to report this supposed crime to any law enforcement agency. See Robertson Dep. at 185:6-10. Instead, in October 2002, she contacted Experian directly in an effort to have the account removed. See Hughes Aff. ¶ 9. The history of Plaintiff's contacts with Experian, and Experian's responses to Plaintiff's disputes, are detailed below.

### 1. October 2002: The First Dispute

Plaintiff first approached Experian regarding the Capital One account in October of 2002, after unsuccessfully attempting to obtain a mortgage. Id. ¶ 9; Ex. 1; Robertson Dep. at 51:1-5; 51:21-23; Ex. 2.[4] Specifically, on or about October 28, 2002, Plaintiff sent a letter to Experian disputing the Capital One account. See Hughes Aff. ¶ 9; Ex. 1. Her letter was not supported with any documentation evidencing the account was not hers, nor any police report concerning any purported identity theft. Id.

After receiving Plaintiff's letter, Experian immediately initiated a reinvestigation of the Capital One account by contacting the creditor directly and instructing the creditor to review its records to verify the accuracy of the information it had provided to Experian. Id. ¶ 11. In response, Capital One verified that the account information matched Plaintiff's identification information and returned a CDV to Experian verifying the information Experian was reporting as accurate. Id. ¶; Ex. 2.

---

[3] Prior to Plaintiff's contact in October 2002, Experian had no indication that the account information that Capital One provided to Experian was unreliable. See Hughes Aff. ¶ 10; Robertson Dep. at 51:24-52:2; Ex. 2. The Capital One account was reported to Experian under the terms of Experian's subscriber agreement with Capital One, and Experian considers Capital One to be a reliable source of information. See Hughes Aff. ¶ 10. Experian therefore had no reason to doubt the accuracy of the information reported by Capital One.

[4] It is undisputed that Plaintiff's inability to obtain financing at this time is unrelated to any alleged wrongdoing on the part of Experian. See Robertson Dep. at 118:8-119:3.

After the reinvestigation, Experian immediately notified Plaintiff that the account was verified as belonging to her, and included an updated copy of her consumer file on November 18, 2002. Id. ¶ 12; Ex. 3. In this correspondence, Experian specifically informed Plaintiff that she could add a statement to her file disputing the accuracy or completeness of the Capital One account, which would have been communicated to all who received Plaintiff's Experian credit report. Id. Plaintiff, however, never requested that a statement be added to her credit file disputing the Capital One account. Id.

While the Capital One account was reporting as being past due, it was neither the only, nor most seriously, derogatory account in her credit file. In fact, her November 18, 2002 Experian file disclosure contained eight other potentially negative accounts with serious delinquencies:

| Credit Items | Status |
| --- | --- |
| ANBCC | Account charged off/Past due 180 days |
| CBA Collection Bureau | Collection account |
| Cred Protections Assoc. | Collection account |
| Discover Financial Services | Account charged off |
| Household Retail Services | Was past due 30 days |
| Household Bank/Best Buy | Account charged off/Collection account |
| MBNA America Bank NA | Paid in settlement/Current, was past due 120 days |
| Providian Financial | Account charged off/Past due 150 days |

Id. ¶

### 2. November 2002: Plaintiff's Second Dispute

The next communication from Plaintiff was a letter Experian received on November 18, 2002.[5] Hughes Aff. ¶ 13; Ex. 4. In her letter, Plaintiff's sole dispute was an address appearing

---

[5] Plaintiff's letter is dated October 23, 2002, but she testified that she may have not sent the letter until November 2002. See Robertson Dep. at 37:20-21; Ex. 4. The envelope the letter was mailed in is postmarked November 13, 2002. See Hughes Aff. ¶ 13; Ex. 4. Experian's records clearly indicate that it did not receive the letter until November 18, 2002. Id. ¶¶ 8; 13; Ex. 4. Plaintiff has no evidence that indicates that she sent the letter on October 23, 2002 or that Experian received it before November 18, 2002. See Robertson Dep. at 50:15-21.

on her credit report.  Id.  Experian immediately updated its records to remove the disputed address.  Id.

Because the address was associated with the Capital One account, Experian initiated another reinvestigation of the account by sending a second CDV to Capital One.  Id. ¶ 14.  During the reinvestigation process, Capital One instructed Experian to delete the Capital One account that was the subject of Plaintiff's dispute.  Id.  Accordingly, the account was immediately removed from Plaintiff's credit file.  Id.

### 3.  Capital One Reports A New Account

At or about the time Capital One instructed Experian to remove the account at issue, Capital One began reporting a new credit account belonging to Plaintiff with a new account number.  Id. ¶ 15.  Importantly, this new account was being reported with a new address, not the address that Plaintiff claimed did not belong to her.  Id.  On December 9, 2002, Experian sent Plaintiff a copy of her consumer disclosure file which evidenced the disputed address had been deleted, as well as the old Capital One account.  Id. ¶ 16; Ex. 5.  In addition, the new Capital One tradeline was reflected in the file disclosure.  Id.  Despite the many changes in Plaintiff's credit file, the bulk of her accurate derogatory credit history remained intact, including eight other potentially negative accounts:

| Credit Items | Status |
| --- | --- |
| ANBCC | Account charged off/Past due 180 days |
| CBA Collection Bureau | Collection account |
| Cred Protections Assoc. | Paid/Collection account |
| Discovery Financial Services | Account charged off |
| Household Retail Services | Open/Current, was past due 30 days |
| Household Bank/Best Buy | Account charged off/Collection account |
| MBNA American Bank NA | Paid in settlement/Current, was past due 120 days |
| Providian Financial | Account charged off/Past due 150 days |

Id.

### 4. March 2004: Plaintiff Disputes the New Capital One Account

Although the new Capital One account appeared on Plaintiff's December 9, 2002 credit disclosure -- as well as credit disclosures that she requested and received in July 2003 and November 2003 -- it was not until February 2004 that Plaintiff first contacted Experian to dispute the new Capital One account. Id. ¶¶ 17-19; Exs. 6, 7, and 8. Plaintiff disputed the account in a letter that Experian received on March 1, 2004. Id.

Experian immediately sent a CDV to Capital One conveying Plaintiff's dispute. Id. ¶ 20. Capital One responded by instructing Experian to delete the account from Plaintiff's credit file, and Experian promptly did so. Id. Experian forwarded an updated file disclosure to Plaintiff on March 11, 2004. Id. The file disclosure indicated that the Capital One tradeline had been removed from Plaintiff's credit file. Id. The file disclosure also contained five potentially negative accounts:

| Credit Items | Status |
|---|---|
| Bluegreen Corp. | Paid/Past due 180 days, $5,758 written off |
| Cred Protections Assoc. | Paid/Collection account |
| MBNA America Bank NA | Paid in settlement/Current, was past due 120 days |
| Providian Financial | Account charged off/Past due 150 days, $2,503 written off |
| University of Phoenix | Account charged off, $4,170 written off |

Id.

Plaintiff had no further contact with Experian until she filed her complaint. Id. ¶ 21.

### V. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, where there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citation omitted).  Under these standards, summary judgment is appropriate here.

## VI.  ARGUMENT

### A.  Plaintiff has Provided No Evidence of Damages Nor a Causal Link Between Her Professed Damages and Experian's Reporting

To recover under any theory alleged in this lawsuit, Plaintiff must have sustained an injury.  The FCRA permits the recovery of "any actual damages sustained by the consumer as a result of the [defendant's] failure" to comply with the statute.  15 U.S.C. § 1681n, 1681o.  Plaintiff bears the burden of proving "that [s]he was damaged as a result of an allegedly inaccurate . . . credit report."  Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991).

Plaintiff cannot prove that Experian's credit reporting caused any of her alleged injuries.  There is therefore no basis for assessing liability under the FCRA, and Experian is entitled to summary judgment.

#### 1.  Credit Denials

Plaintiff alleges that she has suffered "loss of credit" because Experian provided inaccurate information regarding the Capital One account to various potential lenders.  See Plaintiff's Response to Experian's First Set of Interrogatories, attached as Exhibit E to Experian's Fact Appendix ("Pl. Resp. to Def. Interrogs."), Response to Interrogatory No. 23.  In order to recover damages for any loss of credit, Plaintiff must do more than simply prove that inaccurate

information appeared on her credit report; she has the "affirmative duty" of proving that the "allegedly inaccurate information on that report was the cause of [her] denial of credit." Cahlin, 936 F.2d at 1161; see also Cousin v. Trans Union Corp., 246 F.3d 359, 369-70 (5th Cir. 2001) (reversing jury verdict for plaintiff where plaintiff failed to present evidence of causation and damages).

Here, Plaintiff's sole credit denial for which there is any evidence at all is a purported denial of an Infinity Mortgage application in August 11, 2004. See Robertson Dep. Ex. 20. However, trying to establish any causal link between this "denial" and Experian's reporting of a Capital One tradeline is impossible for a host of reasons: (1) there is no evidence a Capital One tradeline was in Plaintiff's Experian credit file as of August 2004, as both Capital One tradelines had been removed by March 2004; (2) Plaintiff's credit denial does not indicate any information was obtained from Experian, and the undisputed evidence is to the contrary; See Robertson Depo. at 136:22-25; Ex. 18; Affidavit of Mike Tusevicus, attached as Ex. C to Experian's Fact Appendix ("Tusevicus Aff.") ¶¶ 5-7; Exs. A and B; and (3) the creditor specifically identifies the reason for the credit denial is based on the application being "[w]ithdrawn by Applicant". See Robertson Dep. Ex. 20. Accordingly, the credit denial itself conclusively establishes there is no causal link between Experian's credit reporting and Plaintiff's denial.

Separately, Plaintiff has made reference to an application for a mortgage with Genesis Mortgage. As with the Infinity Mortgage application, there is no evidence to support a finding of causation or damages to defeat summary judgment. Specifically, Plaintiff has no proof that the Capital One account reported by Experian played any role in Plaintiff's inability to obtain credit. Genesis Mortgage did not use an Experian credit report, but instead relied upon a "tri-merge" report that was prepared by a company called Factual Data and which contained information

from Experian and two other national credit reporting agencies -- Equifax and Trans Union.  See Deposition of Sonny Gandee, attached as Ex. D to Experian's Fact Appendix ("Gandee Dep.") at 8:6-15; 14:10-17; Ex. C.  Plaintiff's Equifax score on the Factual Data report was lower than her Experian score, and the Genesis Mortgage employee who discussed mortgages with the Plaintiff believes Plaintiff's Equifax score would have been one of the factors that affected her ability to obtain credit.  See id. at 47:21-48:5; Ex. C.  Besides the Capital One account, which was being reported with a zero balance and a notation stating "[a]ccount closed by consumer; [p]aid", Plaintiff's Factual Data report included 11 "adverse trade lines", including two collection accounts.  See id.; Ex. C.  And the Genesis Mortgage employee testified that a combination of negative factors on Plaintiff's Factual Data credit report resulted in her inability to obtain credit.  See Gandee Dep. at 24:19-25:3; 48:6-25; 53:10-54:4; 55:23-56:4; 61:3-5.  And he told Plaintiff that she was unable to obtain the credit she desired because of "[a]ll of the accounts with delinquencies." Id. at 61:3-5.

Moreover, when describing his meeting with Plaintiff, the Genesis Mortgage employee testified that "[s]he came in form more of a consultation and what options were available to her and how to put herself in the best position to obtain a mortgage.  And there was no approval or denial offered on any programs, just advice on how she can put herself in a position to get the program she wanted." Id. at 68:9-16.  He "never sent out a denial letter and we never formally denied her on anything." Id. at 57:25-58:1.

Although Plaintiff has stated that she experienced other credit denials, there is not a scintilla of evidence to support these baseless claims.  Even if Plaintiff's testimony were accepted as proof that she applied for credit and was denied during the relevant period, there is no credible evidence that Experian's reporting, much less its reporting of the Capital One account, was a

factor in any creditor's decision. Any testimony by Plaintiff on this subject would be inadmissible as speculation and/or hearsay. See Fed. R. Evd. 602, 802. In fact, even Plaintiff's hearsay underscores the want of causation, as she testified that no mortgage company ever told her that the Capital One account was responsible for a credit denial. See Robertson Dep. at 198:25-199:10.

Simply stated, throughout the period in which a Capital One tradeline appeared in her credit file, Plaintiff's credit history was in shambles. Indeed, Plaintiff concedes, as she must, that the several accurate derogatory tradelines appearing in her credit file may have negatively affected her ability to obtain credit. See Robertson Dep. at 60:25-61:4. Given the failure of causation and damages, Plaintiff's FCRA claims cannot survive summary judgment, and judgment in favor of Experian is appropriate. See Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (affirming grant of summary judgment because "[w]ithout a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an aware of 'actual damages'") (citations omitted); Evans v. The Credit Bureau, 904 F. Supp. 2d 123, 126 (W.D.N.Y. 1995) (granting summary judgment in part because plaintiff "failed to present affirmative evidence that he was in fact denied a loan application or required to pay excessive interest rates because of the alleged incorrect information contained in the credit report").

    **2. Emotional Distress Damages**

Plaintiff also claims to have suffered emotional injuries as a result of the Capital One information on her credit report. Specifically, Plaintiff claims damages associated with "anxiety, physical and mental anguish and injury, [and] humiliation". Pl. Resp. to Def. Interrog. No. 23.

However, Plaintiff's failure to show that Experian's conduct caused an actual injury precludes emotional distress damages as well. Courts hold that plaintiffs suing under the FCRA

may not recover mental distress damages absent a denial of credit or other actual harm caused by the defendant's credit report.  See, e.g., Cousin, 246 F.3d at 370-71 (jury award reversed for compensatory and punitive damages, including emotional distress damages, because of a lack of causation); Casella v. Equifax Credit Information Services, 56 F.3d 469, 475 (2d Cir. 1995) (recognizing that mental distress damages may be recoverable absent out-of-pocket expenses, but refusing to agree that mental distress damages may be recoverable absent an injury -- such as a credit denial); Sutherland v. TRW, No. 94 C 6264, 1996 U.S. Dist. LEXIS 3320, at *21-23 (N.D. Ill. March 20, 1996)[6] (plaintiff may not recover for unsubstantiated mental distress damages in the absence of a denial of credit proximately caused by inaccuracies in a TRW credit report). Thus, Plaintiff's claim for emotional distress damages is barred by her lack of a causal link between Experian's activities and her injury -- her credit denials.

Moreover, non-economic damages are not presumed under the FCRA.  A party seeking damages for emotional distress must present evidence of genuine injury, such as the evidence of the injured party's conduct and the observation of others.  See Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 1052 (1978).

Plaintiff cannot meet her burden of establishing emotional injury caused by Experian. Plaintiff admits that she has never seen a mental health professional.  See Robertson Dep. at 180:18-21.  She has never been diagnosed with depression.  Id. at 180:3-5.

While Plaintiff testified that she sought treatment from a gynecologist named Jacob Kalo for irritable bowel syndrome that she blames on stress related to the Capital One information that was reported on her Experian credit report (see Robertson Dep. at 169:20-25; 175:13-17; 177:24-178:6), Dr. Kalo testified that he never saw or treated the Plaintiff for irritable bowel syndrome --

---

[6] A copy of this case is attached to Experian's Appendix of Unreported Cases, which is attached to the end of this Memorandum as Exhibit 2.

or any other stomach or gastrointestinal problems -- during the time period that the Plaintiff is alleging to have experienced emotional and physical injuries caused by Experian's reporting of the Capital One information.  <u>See</u> Deposition of Dr. Jacob Kalo, attached as Ex. F to Experian's Fact Appendix ("Kalo Dep.") at 20:21-21:20.  Dr. Kalo never had any conversations with the Plaintiff about Experian, Capital One, her ability to obtain credit, or anything related to her credit history.  <u>Id.</u> at 17:24-19:8.  And Plaintiff herself admits that she never talked to Dr. Kalo -- or any other doctor -- about the Capital One account or any credit issues.  <u>See</u> Robertson Dep. at 178:22-179:5.

Dr. Kalo also testified that he never treated Plaintiff for any of the mental, emotional, or physical injuries that she claims to have suffered as a result of Experian's reporting of the Capital One information.  <u>See</u> Kalo Dep. at 24:25-27:15; 27:20-28:19; 28:25-31:8.  In fact, Dr. Kalo testified that he never even discussed any of the alleged injuries with Plaintiff.  <u>Id.</u>

The only evidence available regarding Plaintiff's emotional distress is her own uncorroborated, baseless, and self-serving testimony.

Plaintiff's unsubstantiated claims of "anxiety, physical and mental anguish and injury, [and] humiliation" are similar to the claims of the plaintiff in <u>Sutherland</u> where the court found there is "no case where a plaintiff was awarded damages for such trivial injuries <u>in the absence</u> of a denial of credit."  <u>Sutherland</u>, 1996 U.S. Dist. LEXIS 3320, at *28 (emphasis added).  Plaintiff's alleged emotional distress damages lack the degree of specificity and corroborating evidence required to establish emotional distress damages.  The absence of any cognizable emotional distress that can be directly attributed to Experian forecloses any claim for emotional distress damages.  Summary judgment, therefore, should be granted as to Plaintiff's claims for non-economic damages.

### B. Experian Complied with the FCRA

In addition to failing to meet her burden on the issues of causation and damages, Plaintiff also cannot provide any credible issue of fact related to the reasonableness of Experian's reporting and reinvestigation procedures.

#### 1. Plaintiff Has No Evidence that Experian Failed to Follow Reasonable Procedures to Ensure the Maximum Possible Accuracy of Plaintiff's Credit Reports

The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). A credit reporting agency is not strictly liable for inaccuracies on a consumer's credit report. See Spence v. TRW, Inc., 92 F.3d 380, 383 (6th 1996). Instead, the FCRA imposes only a duty of reasonable care in preparation of credit reports. See Id.

The standard for evaluating the "reasonableness" of a credit reporting agency's procedures is "what a reasonably prudent person would do under the circumstances." Id. Such an evaluation involves "balancing the potential harm from the inaccuracy against the burden on the agency of safeguarding against such inaccuracy." Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994).

Whether a credit reporting agency "has complied with the requirements of adopting reasonable procedures to assure maximum possible accuracy" is a question of law and "thus the decision by the court may be decided upon motion for summary judgment." Ladner v. Equifax Credit Information Services, 828 F. Supp. 427, 430 (S.D. Miss. 1993); see also Dobson v. Holloway, 828 F. Supp. 975 (M.D. Ga. 1993) (granting summary judgment in a § 1681e(b) case involving reasonableness of procedures); Henson v. CSC Credit Services, 29 F.3d 280 (7th Cir. 1994) (affirming summary judgment on § 1681e(b) claims involving reasonable procedures).

As Plaintiff has admitted in her deposition, prior to October 2002, when Plaintiff requested a reinvestigation of her Capital One account, it is undisputed that Experian had no reason to doubt the accuracy of the Capital One account appearing on her credit report. See Robertson Dep. at 51:24-52:2. Similarly, Experian had no reason to doubt the accuracy of the second Capital One account until Plaintiff disputed it in March 2004. Experian cannot be liable for inaccuracies of which it has no notice. In Whelan, 862 F. Supp. at 830, for example, the court deemed plaintiffs' section 1681e(b) claim "fatal" because the credit reporting agency was not notified of the inaccurate information.

The reasonableness of Experian's procedures is demonstrated by the fact that Experian had no objective indication that the information received from Capital One was unreliable. In relying upon information provided to it by a reliable credit grantor, Experian acted "reasonably" and fulfilled its statutory duty under the FCRA. Because Plaintiff has provided no evidence that Experian failed to follow reasonable procedures in preparing her credit report, summary judgment should be granted as to Plaintiff's claims brought under §1681e(b).

### 2.     Experian Conducted Proper Reinvestigations Pursuant to § 1681i

Plaintiff alleges that Experian violated § 1681i of the FCRA by failing to conduct reasonable reinvestigations of Plaintiff's disputes of her Capital One information. The FCRA requires credit reporting agencies to reinvestigate information that is disputed by a consumer and delete inaccurate or unverifiable information. 15 U.S.C. § 1681i(a):

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

According to the Federal Trade Commission, the agency charged with enforcement of the FCRA, a credit reporting agency meets its reinvestigation obligations by "check[ing] with the original sources or other reliable sources of the disputed information and inform[ing] them of the nature of the consumer's dispute." FTC Comm. on the FCRA, 55 Fed. Reg. 18823. Courts considering the issue have also held that a reporting agency complies with the reinvestigation requirements of the FCRA by reinvestigating disputed information with the source of the information to verify that it is accurate. See, e.g., Boothe v. TRW Credit Data, 768 F. Supp. 434, 438 (S.D.N.Y. 1991); Evans, 904 F. Supp. at 125-26.

Here, Experian's investigations fully complied with the FCRA. Plaintiff contacted Experian three times to dispute information in her credit file. Each time Experian sent a CDV to Capital One, the furnisher of the information, to request verification that the account information in its records matched the identifying information for Plaintiff. In doing so, Experian followed the same reinvestigation procedures that repeatedly have been held reasonable and appropriate under § 1681i(a). See, e.g., Podell v. Citicorp Diners Club, Inc., 914 F. Supp. 1025, 1032 (S.D.N.Y. 1996), aff'd 112 F.3d 98 (2d Cir. 1997); Boothe, 768 F. Supp. at 435-439 (holding the CDV process satisfies the reinvestigation requirements of the FCRA). Because Plaintiff has no evidence that Experian failed to properly reinvestigate the Capital One accounts, and because there is undeniable evidence that Experian did properly reinvestigate the Capital One accounts, Plaintiff's FCRA § 1681i(a) claims fail as a matter of law.

### C.     Plaintiff Cannot Recover Punitive Damages, As There Is No Evidence That Experian Acted Willfully to Harm Plaintiff.

Plaintiff seeks punitive damages from Experian with regard to her FCRA claims for relief. To recover punitive damages, Plaintiff must prove that Experian "willfully violated a FCRA requirement." 15 U.S.C. § 1681n. Plaintiff's claims for punitive damages must fail

because there is no evidence that Experian "knowingly and intentionally committed an act in conscious disregard for the rights of others." Stevenson v. TRW, 987 F.2d 288, 293-294 (5th Cir. 1993) (reversing punitive damages award and recognizing the strict standard required for punitive damages against a credit reporting agency for a violation of the FCRA); see also Bryant v. TRW, 487 F. Supp. 1234, 1239 (E.D. Mich. 1980), aff'd, 689 F.2d 72 (6th Cir. 1982) (punitive damages are warranted only for a "voluntary and intentional failure to do something that the law requires with a purpose to either disobey or disregard the law").

Plaintiff cannot meet her heavy burden. There is no evidence that Experian failed to do something the law requires, much less that Experian did so with the intent to harm Plaintiff. There is no evidence or allegation that Experian concealed information from Plaintiff or misrepresented information on her credit file. To the contrary, every time Plaintiff requested something from Experian, Experian promptly responded. Every time Plaintiff requested a copy of her file, Experian sent her a copy. See Hughes Aff. ¶ 22. Every time Plaintiff disputed the accuracy of an item of information appearing on her credit report, Experian promptly responded to her request by conducting a reinvestigation and sending Plaintiff an updated file disclosure summarizing the results of the reinvestigation. Id. ¶ 22. Plaintiff has offered no evidence that anyone at Experian ever refused to talk to her or was rude to her. Moreover, Plaintiff admits that she is not aware that she was singled out by Experian or that Experian intended to cause her harm or that Experian intentionally included inaccurate information in her credit file. Robertson Dep. at 155:21-156:10.

The record is devoid of any evidence that Experian acted intentionally to cause harm to Plaintiff or that Experian acted in conscience disregard to Plaintiff's rights. As such, summary

judgment should be granted in favor of Experian with respect to Plaintiff's punitive damages claims.

## VII.  CONCLUSION

For all of the foregoing reasons, Experian respectfully requests that the Court grant summary judgment in its favor, dismissing all of Plaintiff's claims against Experian with prejudice, and awarding Experian costs, fees, and such other and further relief as the Court deems proper.

/s/ Brad A. Sobolewski
Sidney L. Frank (P13637)
Tamara E. Fraser (P51997)
Frank, Haron, Weiner & Navarro
Local Counsel for Defendant Experian
Information Solutions, Inc.
5435 Corporate Drive, Suite 225
Troy, Michigan  48098
(248) 952-0400

Brad A. Sobolewski (OH 0072835)
Jones Day
Lead Counsel for Experian
Information Solutions, Inc.
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
(216) 586-3939