# EXHIBIT A

# Affidavit of Kimberly Hughes

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Lottie Robertson,<br><br>    **Plaintiff,**<br><br>v.<br><br>Experian Information Solutions, Inc., et al.<br><br>    **Defendants.** | Civil Action No. 04-CV-72308<br>Hon. Robert H. Cleland |

## AFFIDAVIT OF KIMBERLY HUGHES

I, Kimberly Hughes, being duly sworn, declare and state as follows:

### Background

1. I am a Consumer Affairs Specialist in the National Consumer Assistance Center of Experian Information Solutions, Inc. ("Experian"), located in Allen, Texas. I have been employed by Experian since August of 1997. I have been a Consumer Affairs Specialist since July of 2000. My general responsibilities include processing, examining and responding to consumer complaints; verifying and updating consumers' Experian credit files; and conducting research in conjunction with consumer complaints, including research of Experian's own proprietary and confidential records as well as records received from creditors and others who report information to Experian.

### Experian's Credit Reporting Process

2. Based upon my experience with Experian, I am very familiar with Experian's policies and procedures for the compilation, retention, reinvestigation and disclosure of

CLI-1302138v1

consumer credit information. The facts set forth herein are based upon my personal knowledge, and if I were called upon to testify to them, I could and would competently do so.

3. Experian operates as a consumer credit reporting agency pursuant to the Fair Credit Reporting Act ("FCRA"). As a consumer credit reporting agency, Experian acts as a conduit of credit information that is pertinent to prudent credit granting and related decisions. Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. Experian does not originate or create any credit information, and Experian does not make loans or decide who should receive credit. Both of those functions are handled entirely by the credit granting industry, over which Experian has no control.

4. Experian essentially acts as a storehouse of credit information by storing, retrieving and furnishing data as allowed by the FCRA. Credit grantors report to Experian credit information called "trade lines" that consist of credit account information such as account number, account payment status, and balance information. Along with trade lines, credit grantors report certain consumer identifying information associated with the trade line.

5. After the credit data is received by Experian and before it is added to a consumer's credit file, the information is subjected to rigorous quality control and statutory compliance procedures to ensure that only accurate information is reported. It is my understanding that these procedures include: (1) working with credit grantors to ensure that they supply the most complete and accurate data possible; (2) subjecting all incoming data to numerous systems and checks designed to prevent errors; (3) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (4) working with consumers to proactively prevent errors in consumer credit reports.

Furthermore, Experian has implemented a series of policies and procedures designed to protect against consumer fraud, including requiring sufficient identifying information be provided to Experian before Experian will take any action regarding a consumer's file.

6. Experian has developed detailed procedures for providing consumers with access to their Experian credit files and means to dispute those items with which they disagree. Experian has implemented procedures designed to involve the consumers who are the subjects of the credit reports produced by Experian in the overall process that assures the maximum possible accuracy of such reports. Consumers who disagree with the accuracy or completeness of any item of information can dispute those items directly with Experian, pursuant to the FCRA. Experian actively encourages consumers to request credit disclosures, review them, and submit disputes of any items claimed to be inaccurate or incomplete in order to assure that the information reported by Experian is as accurate as possible.

7. Experian does not have access to creditors' records. Therefore, after receiving consumer disputes Experian generally reinvestigates disputed information by contacting the furnishers who reported it, explaining the consumer's dispute, and asking for a response concerning the accuracy of the information. Experian sends the furnisher, *i.e.*, the creditor, a "Consumer Dispute Verification." Experian sends the Consumer Dispute Verification form manually (a "CDV") or electronically (an automated CDV, or "ACDV"). The CDV or ACDV identifies the consumer and the basis of his or her dispute and asks the creditor to verify the information it currently is reporting to Experian. The creditor then returns the CDV or ACDV to Experian and may verify the information, instruct Experian to delete the item, or instruct Experian to change it in some specific manner. Experian then makes any appropriate changes instructed by the creditor. Even if the creditor verifies the item, Experian will delete it if

Experian's review of the CDV reveals that the information is inconsistent or insufficient to verify the item. Experian then sends the consumer a credit report reflecting the results of the reinvestigation. The summary also contains a statement regarding procedures the consumer may follow if the consumer disagrees with the results of the investigation, including contacting the creditor directly and adding a statement to the consumer's credit file disputing the accuracy or completeness of the disputed item. If the creditor fails to respond, then the information is updated or deleted, depending on the consumer's dispute. Again, the consumer is notified.

8. Upon receiving incoming mail, it is Experian's policy to stamp the envelope with the date it was received.

**Lottie Robertson**

9. Plaintiff Lottie Robertson ("Plaintiff") first approached Experian regarding a Capital One account on October 28, 2002, when Experian received a letter from Plaintiff disputing the Capital One account. A true and correct copy of the letter and its envelope is attached as Exhibit 1. Her letter was not supported with any documentation evidencing the account was not hers. She did not provide Experian with a police report concerning any purported identity theft.

10. Prior to Plaintiff's contact in October 2002, Experian had no indication that the account information that Capital One provided to Experian was unreliable. The Capital One account was reported to Experian under the terms of Experian's subscriber agreement with Capital One, and Experian considers Capital One to be a reliable source of information.

11. After receiving Plaintiff's letter, Experian immediately initiated a reinvestigation of the Capital One account by contacting the creditor directly and instructing the creditor to review its records to verify the accuracy of the information it had provided to Experian. In response, Capital One verified that the account information matched Plaintiff's identification

information and returned a CDV to Experian verifying the information Experian was reporting as accurate. A true and correct copy of the CDV is attached as Exhibit 2.

12. After the reinvestigation, Experian immediately notified Plaintiff that the account was verified as belonging to her, and included an updated copy of her consumer file on November 18, 2002. A true and correct copy of Plaintiff's November 18, 2002 consumer disclosure is attached as Exhibit 3. In this correspondence, Experian specifically informed Plaintiff that she could add a statement to her file disputing the accuracy or completeness of the Capital One account, which would have been communicated to all who received Plaintiff's Experian credit report. Plaintiff, however, never requested that a statement be added to her credit file disputing the Capital One account.

13. The next communication Experian received from Plaintiff was a letter Experian received on November 18, 2002. A true and correct copy of this letter and its envelope is attached as Exhibit 4. In her letter, Plaintiff's sole dispute was an address appearing on her credit report. Experian immediately updated its records to remove the disputed address.

14. Because the address that Plaintiff disputed in her letter was associated with the Capital One account, Experian initiated another reinvestigation of the account by sending a second CDV to Capital One. During the reinvestigation process, Capital One instructed Experian to delete the Capital One account that was the subject of Plaintiff's dispute. Accordingly, the account was immediately removed from Plaintiff's credit file.

15. At or about the time Capital One instructed Experian to remove the account at issue, Capital One began reporting a new credit account belonging to Plaintiff with a new account number. Unlike the previously disputed account, this new account was reported as

"current". The new account was being reported with a new address, not the address that Plaintiff claimed did not belong to her.

16. On December 9, 2002, Experian sent Plaintiff a copy of her consumer disclosure file which evidenced the disputed address had been deleted, as well as the old Capital One account. A true and correct copy of Plaintiff's December 9, 2002 consumer disclosure is attached as Exhibit 5. The new Capital One tradeline was reflected in the file disclosure.

17. Plaintiff contacted Experian on July 18, 2003 to request a copy of her consumer disclosure. A consumer disclosure was sent to her on July 22, 2003. A true and correct copy of Plaintiff's July 22, 2003 consumer disclosure is attached as Exhibit 6.

18. Plaintiff contacted Experian on November 22, 2003 to request a copy of her consumer disclosure. A consumer disclosure was sent to her on November 25, 2003. A true and correct copy of Plaintiff's November 25, 2003 consumer disclosure is attached as Exhibit 7.

19. Plaintiff first disputed the new Capital One account in a letter that Experian received on March 1, 2004. A true and correct copy of the letter and its envelope is attached as Exhibit 8.

20. Experian immediately sent a CDV to Capital One conveying Plaintiff's dispute. Capital One responded by instructing Experian to delete the account from Plaintiff's credit file, and Experian promptly did so. Experian forwarded an updated file disclosure to Plaintiff on March 11, 2004. A true and correct copy of Plaintiff's March 11, 2004 consumer disclosure is attached as Exhibit 9. The file disclosure indicated that the Capital One tradeline had been removed from Plaintiff's credit file. Plaintiff has not had a Capital One account in her credit file since March 11, 2004.

21. Plaintiff had no further contact with Experian until she filed her complaint.

22. Every time Plaintiff requested a copy of her file, Experian sent her a copy. Every time Plaintiff disputed the accuracy of an item of information appearing on her credit report, Experian promptly responded to her request by conducting a reinvestigation and sending Plaintiff an updated file disclosure summarizing the results of the reinvestigation.

AFFIANT SAYETH FURTHER NOT.

_____
Kimberly Hughes

STATE OF TEXAS        )
                      )
COUNTY OF DALLAS      )

Sworn to and subscribed before me
this ____ day of ___May_____, 2005

_____
Notary Public in and for the
State of Texas

Commission expires:



BETH BLANOCK
MY COMMISSION EXPIRES
January 29, 2006

CLI-1302138v1                          7